# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| SLEP-TONE ENTERTAINMENT CORPORATION, | ) ) ) | No. 14 C 3577 |
| Plaintiff, | ) ) | Judge Thomas M. Durkin |
| v. | ) ) | |
| KALAMATA, INC., | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Slep-Tone Entertainment Corp. ("Slep-Tone") brings an action against Kalamata, Inc. ("Kalamata") for trademark infringement of four of Slep-Tone's trademarks and for unfair competition. R. 1. Kalamata brings a number of counterclaims, principally alleging that Slep-Tone fraudulently procured two of its trademarks. R. 10. In Count I of its counterclaims, Kalamata seeks a declaration of invalidity of the two trademarks it alleges Slep-Tone fraudulently procured; in Counts III and IV, Kalamata asks for the cancellation of the same two trademarks; in Count V, Kalamata seeks damages for the injuries it suffered as a result of the fraudulent procurement of the two trademarks; and in Count VIII, Kalamata brings a common law fraud claim for Slep-Tone's alleged false representations of valid trademark ownership to Kalamata. In addition, Kalamata asserts violations of the Sherman and Clayton Acts in Counts VI and abuse of process in Count VII. Slep-

1

Tone asks the Court to dismiss all but one of the counterclaims[1] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. R. 13. For the reasons set forth below, the Court grants Slep-Tone's motion to dismiss in part and denies it in part.

I.   Background

Kalamata owns and operates a commercial establishment called "Where Else Bar and Grill," R. 1 at 2 ¶ 9, which offers karaoke shows. R. 10 at 4 ¶¶ 9-10. Karaoke shows are a form of "participatory entertainment, in which individual patrons or groups of patrons," ("karaoke participants"), "sing popular songs while accompanied by recorded accompaniment music." R. 1 at 3 ¶ 15. To provide karaoke shows, Kalamata hires karaoke operators, who play karaoke accompaniment tracks ("karaoke tracks") to guide the karaoke participants to sing along with the music. *Id.* at 3-4 ¶¶ 14-16; R. 10 at 4 ¶ 10. The karaoke tracks are recorded songs with the vocals faded or omitted and "with graphical displays of the lyrics" of the songs and "other material synchronized to the music." R. 1 at 4 ¶ 17. Slep–Tone is a manufacturer of karaoke tracks. *Id.* at 6 ¶ 39. According to Slep-Tone, it has spent "tens of millions of dollars . . . to build a world-class recording studio, to hire musicians, to acquire appropriate licenses, . . . to pay ongoing royalties, and to advertise" its karaoke products, among them the karaoke tracks. *Id.* at 6-7 ¶ 40.

In its complaint, Slep-Tone alleges that it owns Trademark Registration Nos. 1,923,448 and 4,099,045, for the trademark SOUND CHOICE, which consists of the

---

[1] Count II is the only counterclaim that Slep-Tone does not move to dismiss. In Count II, Kalamata asks the Court for a declaratory judgment that Kalamata did not infringe Slep-Tone's purported trademark rights. R. 10 at 29-30 ¶¶ 31-38.

2

words "Sound Choice" written across the backdrop of five lines of a music staff:

and Trademark Registration Nos. 2,000,725 and 4,099,052, for the display of the trademark. R. 1 at 3 ¶¶ 11-13. A trademark is "a distinctive mark of authenticity, through which the products of particular manufacturers . . . may be distinguished from those of others." *Hoopla Sports & Entm't, Inc. v. Nike, Inc.*, 947 F. Supp. 347, 353 (N.D. Ill. 1996) (internal quotation marks omitted) (citations omitted). A trademark may consist of any symbol or words. *Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781 F.2d 604, 609 (7th Cir. 1986). According to Slep-Tone, Kalamata hires karaoke operators who use pirated copies of Slep-Tone's karaoke tracks to produce karaoke shows at Kalamata's venue. *Id.* at 1 ¶ 2, 3-5 ¶¶ 14-26. Slep-Tone alleges that it never authorized these operators, or any individual from whom they may have obtained copies, to make or obtain copies of the karaoke tracks or apply the trademark to any product. *Id.* at 4 ¶¶ 21-23. Slep-Tone also alleges that it did not receive any royalties or fees from the karaoke operators for the duplication of the karaoke tracks and the use and display of the trademark. *Id.* at 4-5 ¶¶ 24-25. Slep-Tone alleges that Kalamata derived significant financial gain from contracting with the karaoke operators, *id.* at 5 ¶¶ 29-31, and is vicariously liable for trademark infringement and unfair competition. *Id.* at 9-12 ¶¶ 57-76.

In its counterclaims, Kalamata alleges that Slep-Tone fraudulently procured Trademark Registration Nos. 4,099,045 and 4,099,052 for the trademark SOUND

3

CHOICE and the display of the trademark.[2] R. 10 at 26-27 ¶¶ 11-18. A trademark may be registered with the United States Patent and Trademark Office ("PTO") if it distinguishes a manufacturer's goods or services from those of others, *see* 15 U.S.C. § 1052, and if it has been "used in commerce." *See* 15 U.S.C. §§ 1051(a)(1), 1127. A person seeking to register a trademark must file an application with the PTO, stating, *inter alia*, the date that the applicant first used the mark in commerce and the goods in connection with which the mark is used. 15 U.S.C. § 1051(a)(2). Kalamata alleges that Slep-Tone stated in its application[3] to the PTO that it had used the trademark SOUND CHOICE in commerce to conduct entertainment exhibitions in the nature of karaoke shows beginning on July 21, 2010. R. 10 at 26-27 ¶¶ 12-16. According to Kalamata, however, Slep-Tone has never been in the entertainment karaoke business and thus, it has never used the trademark in commerce to conduct karaoke shows. *Id.* at 27 ¶¶ 16-18. Kalamata further alleges that Slep-Tone is engaged in a nationwide litigation scheme to force venue owners, including Kalamata, to buy Slep-Tone's products or contract exclusively with karaoke operators who are licensed through Slep-Tone. *Id.* at 25-28 ¶¶ 6-25. Kalamata alleges that since obtaining the trademarks, Slep-Tone has threatened and filed numerous lawsuits against karaoke operators and venue owners who

---

[2] Kalamata does not challenge the validity of Trademark Registration Nos. 1,923,448 and 2,000,725, for the trademark SOUND CHOICE and the display of the trademark.

[3] While Kalamata alleges that the application was filed on or about November 29, 2011, the actual date of the application is July 6, 2011. This discrepancy does not affect the resolution of this motion as it is clear that both parties acknowledge the application at issue is Trademark/Service Mark Application, Serial No. 85364555.

refuse to buy its products or hire its licensed karaoke operators. *Id.* at 26 ¶¶ 9-10, 27-28 ¶¶ 20-23.

## II. Legal Standard

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

## III. Analysis

### A. The Fraud-Based Counterclaims.

#### 1. The Counterclaims for Fraudulent Procurement of the Trademarks

Kalamata alleges in its counterclaims that Slep-Tone fraudulently procured Trademark Registration Nos. 4,099,052 and 4,099,045 with the PTO. R. 10 at 26-27 ¶¶ 11-16. In Counts I, III, and IV, Kalamata asks the Court to invalidate and cancel these marks. *Id.* at 28-29 ¶¶ 26-30, 30-32 ¶¶ 39-54. In Count V, Kalamata seeks damages for injuries it suffered as a result of the alleged fraudulent procurement. *Id.* at 32-33 ¶¶ 55-58. Slep-Tone has moved to dismiss these Counts.

A claim for fraudulent procurement requires the party challenging the validity of a trademark to demonstrate that the trademark applicant "deliberately attempted to mislead the PTO by presenting materially false and misleading information when . . . appl[ying] for the[] trademark registration." *Box Acquisitions, LLC v. Box Packaging Prods., LLC*, No. 12 C 4021, 2014 WL 1245264, at *8 (N.D. Ill. Mar. 26, 2014) (citing to *Money Store v. Harriscorp Fin., Inc.*, 689 F.2d 666, 670 (7th Cir. 1982)); *see also Thomas Indus., Inc. v. L.E. Mason Co.*, No. 90 C 4099, 1991 WL 83821, at *2 (N.D. Ill. May 12, 1991) (A claim for fraudulent procurement of a trademark requires "'(1) [a] false representation regarding a material fact; (2) the registrant's knowledge or belief that the representation is false (scienter); (3) the intention to induce action or refraining from action in reliance on the misrepresentation; (4) reasonable reliance on the misrepresentation; and (5)

damages proximately resulting from such reliance.'") (quoting *San Juan Prods., Inc. v. San Juan Pools of Kan., Inc.*, 849 F.2d 468, 473 (10th Cir. 1988)). Kalamata alleges that Slep-Tone obtained Trademark Nos. 4,099,052 and 4,099,045 by stating in its November 29, 2011 application to the PTO that it had used the SOUND CHOICE trademark in commerce to "conduct[] entertainment exhibitions in the nature of karaoke shows" beginning on July 21, 2010. R. 10 at 26-27 ¶¶ 12-15. Kalamata alleges that these representations were false because Slep-Tone has never participated in or otherwise conducted a karaoke entertainment exhibition and thus, it has never used the trademark in commerce to conduct karaoke shows. *Id.* at 27 ¶¶ 15-18. Kalamata further alleges that Slep-Tone's false representations were material because they allowed Slep-Tone to fulfill the "use in commerce" requirement to register the marks. *Id.* at 26-27 ¶¶ 12-18, 28-29 ¶ 29. Slep-Tone responds by asserting that Kalamata's allegations for fraudulent procurement are foreclosed by Slep-Tone's publicly available application, which shows that Slep-Tone disclosed that the "use in commerce" of the trademark was through Slep-Tone's licensees. R. 13 at 2-5.

While it is usually impermissible for the Court to consider matters outside the complaint to decide a motion to dismiss, the Court may "[t]ak[e] judicial notice of matters of public record." *Ennega v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012); *Telebrands Corp. v. Del Labs., Inc.*, 719 F. Supp. 2d 283, 287 n. 3 (S.D.N.Y. 2010) ("The Court may properly take judicial notice of official records of the United States Patent and Trademark Office."). In the "Specimen Description" portion of its

7

application to the PTO (the "application statement"), Slep-Tone wrote the following: "digital photographs of a performance of the services by a licensee and showing the mark being displayed during the performance." *See* R. 13, Ex. 1 at 2. This application statement, Slep-Tone contends, "unequivocally" establishes that Slep-Tone never stated that the "use in commerce" of the trademark had been through its own use and that, instead, Slep-Tone disclosed that it was satisfying the "use in commerce" requirement through use of the trademark by licensees. R. 13 at 5.

The Lanham Act states that "use in commerce" is "the bona fide use of a mark in the ordinary course of trade." 15 U.S.C. § 1127. A mark is "deemed to be in use in commerce . . . when it is used or displayed in the sale or advertising of services and the services are rendered in commerce . . . and the person rendering the services is engaged in commerce in connection with the services." 15 U.S.C. § 1127. Importantly, the applicant need not use the trademark through its own use to satisfy the "use in commerce" requirement. 15 U.S.C. §1055; *see also Teddy O'Brian's, Inc.*, 2014 WL 4783048, at *2; *Cobra Capital LLC v. LaSalle Bank Corp.*, 455 F. Supp. 2d 815, 819 (N.D. Ill. 2006). Instead, the "use in commerce" requirement can be satisfied by use of the trademark through an applicant's "related company" so long as the use "inure[s] to the benefit of the . . . applicant" and "is controlled by the . . . [applicant] . . . with respect to the nature and quality of the goods or services." 15 U.S.C. § 1055; *see also Cobra Capital LLC*, 455 F. Supp. 2d at 819; *S Indus., Inc. v. Stone Age Equip., Inc.,* 12 F. Supp. 2d 796, 804 n. 14 (N.D. Ill. 1998) (citing Restatement (Third) of Unfair Competition § 33 notes to cmt.

b (1995)) ("15 U.S.C.A. § 1055[] explicitly recognizes the acquisition of trademark rights by a licensor through a first use of the mark by a controlled licensee"); *Reddy Commc'ns v. Env't. Action*, 477 F. Supp. 936, 944 (D.D.C. 1979) (stating that the Lanham Act authorizes a trademark owner to register its mark "where the licensees of the . . . mark are related companies, i.e. where the owner of the . . . mark controls the licensees as to the nature and quality of the goods or services in connection with which the mark is used") (internal quotations marks and citations omitted).

While the law is clear that the "use in commerce" requirement may be satisfied through use of the trademark by controlled licensees,[5] the question remains whether the scope of the discussion of the use in commerce in Slep-Tone's application statement was sufficient and thereby conclusively forecloses Kalamata's claims for fraudulent procurement of the marks. The Court's analysis is informed by the decision of another court in this District that recently decided a motion to dismiss in another trademark infringement and unfair competition action brought by Slep-Tone. *See Slep-Tone Entm't Corp. v. Teddy O'Brian's, Inc.*, No. 14 C 3570, 2014 WL 4783048, at *1 (N.D. Ill. Sept. 24, 2014). That case involved the same Trademark Registration numbers and presented the identical issues this Court now addresses. Although prior decisions by courts in the Northern District of Illinois are not binding precedent, they may serve as persuasive authority. *Obrycka v. City of*

---

[5] Whether Slep-Tone actually met the "use in commerce" requirement through use of the trademark by licensees is not raised by the parties and the Court need not address it to decide this motion.

9

*Chi.*, 913 F. Supp. 2d 598, 602 (N.D. Ill. 2012). The Court finds the *Teddy O'Brian* decision to be well-reasoned and particularly persuasive on the issue of whether the counterclaims for fraudulent procurement should be dismissed.

Slep-Tone's application statement describes the marks as "digital photographs of a performance of the services by a licensee." *See* R. 13, Ex. 1 at 2. That statement does not, on its own, inform this Court that Slep-Tone disclosed to the PTO that the "use in commerce" of the trademark was by controlled licensees rather than by its own use. The disclosures that Slep-Tone was required to make in its application are governed by the PTO Trademark Manual of Examining Procedure (TMEP) and the Rules of Practice in Trademark Cases, 37 C.F.R. §2.38(b). The TMEP and the Rules of Practice in Trademark Cases, as the court in *Teddy O'Brian's, Inc.* explained, "variously state[]" the disclosures needed to register a mark when its "use in commerce" is through licensees. 2014 WL 4783048, at * 2; *see e.g.* TMEP, 7th ed. §§ 1201.03(a), *available at* http://tess2.uspto.gov/tmdb/tmep_7ed/ (last visited December 8, 2014) ("the applicant should state in the body of the application that [it] has adopted and is using the mark *through its related company* (or equivalent explanatory wording)") (emphasis in original); 37 C.F.R. §2.38(b) ("If the mark is not in fact being used by the [applicant] but is being used by one or more related companies . . . such facts must be indicated in the application"); TMEP §§ 1201.03(a) ("The applicant is not required to give the name of the related-company user, unless it is necessary to

10

explain information in the record that clearly contradicts the applicant's verified claim of ownership of the mark.").

In reviewing the rules and procedures in the TMEP and Rules of Practice in Trademark Cases, it is not clear what language is sufficient to disclose that the "use in commerce" of a mark is through licensees or "where such language must appear in the application." *Teddy O'Brian's, Inc.*, 2014 WL 4783048, at * 2. It is also not clear "whether this record contains all of the information the USPTO reviewed in connection with [Slep-Tone's] application." *Id*. For example, based on the TMEP and the record before the Court, the Court cannot determine whether the application statement qualifies "as equivalent explanatory wording" or whether Slep-Tone was required to give the name of the licensees using the trademark. As such, the Court is unable to determine whether the application statement sufficiently disclosed to the PTO that Slep-Tone's "use in commerce" of the trademark was through controlled licensees. The application statement, therefore, cannot be grounds for dismissing Kalamata's claim that Slep-Tone obtained the marks by making material misrepresentations to the PTO. *See id.*, at *2 (concluding that Slep-Tone's "assertion that it did not make . . . a [false] representation is not a basis for dismissing . . . [the fraudulent procurement] counterclaims").

Slep-Tone contends that even if Kalamata has adequately stated a claim for fraudulent procurement of the marks, the Court should still dismiss the claims because Kalamata did not plead fraud with specificity as required by Federal Rule of Civil Procedure 9(b). Cases of fraudulent procurement must satisfy the pleading

11

requirements of Rule 9(b). *Gaffrig Performance Indus., Inc. v. Livorsi Marine, Inc.*, No. 99 C 7778, 2001 WL 709483, at *4 (N.D. Ill. June 25, 2001). Rule 9(b) requires Kalamata to identify "the who, what, when, where, and how" of the acts constituting the fraud. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Kalamata's allegations meet this requirement.

First, Kalamata alleges that Slep-Tone committed fraud in the form of material misrepresentations to the PTO, thereby, fulfilling the "who" and "what" requirements. R. 10 at 26-27 ¶¶ 12-16. Second, Kalamata satisfies the "how" requirement by alleging that Slep-Tone made the misrepresentations by claiming to the PTO that the SOUND CHOICE mark was "use[d] in commerce." *Id.* at 26-27 ¶¶ 12-16, 28-29 ¶ 29. Lastly, Kalamata alleges that Slep-Tone made the misrepresentations in its trademark application to the PTO on or about November 29, 2011, satisfying the "where" and "when" requirements. *Id.* The Court, therefore, finds that the fraudulent procurement counterclaims satisfy Rule 9(b).

### 2. The Counterclaim for Common Law Fraud

The Court concludes, however, that Kalamata did not state a claim for common law fraud in Count VIII. In Illinois, the basic elements of common law fraud are: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007) (citing *Connick v.*

*Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 591 (Ill. 1996)). Kalamata alleges that Slep-Tone is liable for common law fraud because Slep-Tone falsely represented to Kalamata that it owned valid trademarks in order to induce Kalamata to buy Slep-Tone's products and hire only karaoke operators who are licensed through Slep-Tone. R. 10 at 35 ¶¶ 79-84. Kalamata, however, does not allege that it relied on Slep-Tone's alleged misrepresentations by exclusively hiring Slep-Tone's karaoke operators or buying only Slep-Tone products. In the absence of allegations about Kalamata's reliance on the misrepresentations, there can be no common law fraud claim. *See People ex rel. Peters v. Murphy-Knight*, 618 N.E.2d 459, 465 (Ill. App. Ct., 1st Dist. 1993) ("A claim for common law fraud requires actual reliance."); *Doctor's Data, Inc. v. Barrett*, No. 10 C 03795, 2011 WL 5903508, at *11 (N.D. Ill. Nov. 22, 2011) (dismissing common law fraud claim in part because plaintiff failed to allege reliance on misrepresentations). Accordingly, the Court dismisses Count VIII.[6]

### B. The Antitrust Counterclaims.

Slep-Tone also seeks to dismiss Count VI, which alleges that Slep-Tone is liable for antitrust violations under the Sherman Act, 15 U.S.C. §§1-7, and the Clayton Act, 15 U.S.C §§12-27. R. 10 at 33 ¶¶ 59-60. Kalamata alleges that the antitrust violations arise from Slep-Tone's attempts to coerce venue owners to exclusively buy Slep-Tone's products or hire Slep-Tone-licensed karaoke operators by threatening and instituting legal action against venue owners if they refuse. *Id.*

---

[6] In its motion to dismiss, Slep-Tone refers to the common law fraud claim both as Counts VIII and IX, R. 13 at 1, 3, 8, 14. The common law fraud claim is contained in Count VIII. R. 10 at 35-36 ¶¶ 79-84. The complaint does not contain a Count IX.

at 33-34 ¶¶ 61-69. Kalamata alleges that these actions "drive up the price of services allowing [Slep-Tone] to charge additional costs for [its] products and otherwise eliminate the ability of other companies to enter into the karaoke track market." *Id.* at 34 ¶ 66. Kalamata contends that these actions establish a *per se* violation or, at the very least, an unreasonable restraint on trade under the Sherman Act as well as price discrimination under the Clayton Act. R. 16 at 11, 13. Slep-Tone argues that Kalamata's allegations fail to state a claim for relief under both Acts. R. 13 at 8-12. The Court agrees.

As a threshold matter, the Court notes that Kalamata does not explain nor is it apparent how Kalamata's allegations give rise to antitrust violations under Sections Two through Seven of the Sherman Act. *See* 15 U.S.C. §§ 2-7. Section One of the Sherman Act, the only section Kalamata explains as a ground for its antitrust claims, prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1; *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 n. 4 (7th Cir. 1984) ("allegations of . . . concerted action [are] required to state a claim under § 1 of the Sherman Act . . . [u]nilateral action, of course, is not a violation of § 1"). Under this Section, *per se* liability is reserved for those agreements that "facially appear[] to be [the type of practice] that would always or almost always tend to restrict competition and decrease output," namely price-fixing agreements. *Ford Motor Co.*, 745 F.2d at 1108. Kalamata fails to allege that Slep-Tone is liable for a *per se* violation as it

14

does not allege that Slep-Tone participated in any agreement, including a conspiracy or other concerted action to, for example, fix prices.

Alleged anticompetitive conduct proscribed by the Sherman Act can also be examined under what is known as the "[r]ule of [r]eason." *Med. CME Assocs. v. Accreditation Council for Continuing Med. Educ.*, No. 88 C 3023, 1990 WL 160075, at *5 (N.D. Ill. Sept. 13, 1990). "The 'rule of reason' is the established standard of analysis. . . . [under which] the fact finder weighs all the circumstances of a case to decide whether a restrictive practice should be prohibited as imposing an 'unreasonable restraint on competition.'" *Bunker Ramo Corp. v. United Bus. Forms, Inc.*, 713 F.2d 1272, 1283 (7th Cir. 1983) (citations omitted). The analysis requires a showing that the alleged antitrust violator has "market power" in the relevant market. To satisfy the "market power" requirement, the claimant must establish that an alleged agreement has produced adverse, anti-competitive effects within a specifically defined and relevant geographic market. *Menasha Corp. v. News Am. Mktg. In-Store, Inc.*, 354 F.3d 661, 663 (7th Cir. 2004); *Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 738 (7th Cir. 2004); *see also 42nd Parallel North v. E Street Denim Co.*, 286 F.3d 401, 404 (7th Cir. 2002). Again, Kalamata does not allege the existence of an agreement to restrain trade nor does it identify a relevant market and therefore fails under the rule of reason analysis as well.

Kalamata's allegations are equally insufficient to establish a claim for price discrimination under the Clayton Act. Of the multiple sections of the Clayton Act

15

Kalamata cites, Section 13(a) appears to be the only section relevant to its claims.[7] Section 13(a) provides, in pertinent part, that "[i]t shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, . . . where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce." 15 U.S.C. § 13(a). Under Section 13(a), price discrimination "'is merely a price difference.'" *Jays Foods, Inc. v. Frito-Lay, Inc.*, 614 F. Supp. 1073, 1086 (N.D. Ill. 1985) (citations omitted). Price discrimination falls into three different categories: "primary line, secondary line, and tertiary line." *Volvo Trucks N. Am., Inc. v. Reeder–Simco GMC, Inc.*, 546 U.S. 164, 176 (2006). Each of these categories has specific elements and involves different conduct and injuries. Primary line discrimination "entail[s] conduct—most conspicuously, predatory pricing—that injures competition at the level of the discriminating seller and its direct competitors." *Id.* Secondary line discrimination "involve[s] price discrimination that injures competition among the discriminating seller's customers . . . typically refer[ing] to 'favored' and 'disfavored' purchasers." *Id*. Tertiary-line discrimination cases "involve injury to competition at the level of the purchaser's customers." *Id.* Kalamata does not allege any price difference or any conduct on the part of Slep-Tone that falls under any of the three

---

[7] In its answer and response to the motion to dismiss, Kalamata fails to explain the applicability of Sections 12 and 14-27 of the Clayton Act. In its response to the motion to dismiss, Kalamata discusses only Section 13(a) of the Clayton Act (the Robinson-Patman Act). R. 16 at 11-13. Thus, the Court will only address Section 13(a) of the Clayton Act.

16

categories of price discrimination. Kalamata contends that under the Rule 12(b)(6) standard, the Court should infer that its claims allege all three types of price discrimination. R. 16 at 13. While the Court must make all reasonable inferences in favor of the non-moving party in resolving a motion to dismiss, the inferences must be drawn from alleged facts. Kalamata alleges no facts from which this Court could discern any type of price discrimination. Count VI, therefore, is dismissed for failure to state a claim for antitrust violations.

## C. The Abuse of Process Counterclaim.

Lastly, Kalamata alleges in Count VII that Slep-Tone abused process by instituting its lawsuit to force Kalamata to exclusively buy Slep-Tone's products and hire Slep-Tone-licensed karaoke operators. R. 10 at 34-35 ¶¶ 70-78. Under Illinois law, "an abuse of process claim requires proof of two elements: (1) existence of an ulterior motive or purpose; and (2) some act in the use of legal process not proper in the regular prosecution of the proceedings." *Podolsky v. Alma Energy Corp.*, 143 F.3d 364, 372 (7th Cir. 1998) (citing *Kirchner v. Greene*, 691 N.E.2d 107, 116 (Ill. App. Ct., 1st Dist. 1998)). In this context, "'process' is not used . . . in the general sense—as in 'the legal process' of suing someone, prosecuting the case, [or] receiving judgment, etc." *Rubloff Dev. Grp., Inc. v. SuperValu, Inc.*, 863 F. Supp. 2d 732, 747 (N.D. Ill. 2012) (citations omitted). Instead, "'[process]' is used in the literal, legal sense of something issued by the court . . . under its official seal." *Id.* Therefore, under the second element, the defendant must allege that the plaintiff used the court's process "to accomplish some result beyond the purview of the

process or to compel the party against whom it is used to do some collateral thing that [it] could not legally be compelled to do." *Kumar v. Bornstein*, 820 N.E.2d 1167, 1174-75 (Ill. App. Ct., 2nd Dist. 2004). An action for abuse of process "does not exist unless there is some improper use of the process of the court." *Holiday Magic, Inc. v. Scott*, 282 N.E.2d 452, 456 (Ill. App. Ct., 1st Dist. 1972); *Doyle v. Shlensky*, 458 N.E.2d 1120, 1128 (Ill. App. Ct., 1st Dist. 1983).

Kalamata does not allege that Slep-Tone has used a court's process to force Kalamata do something it was not legally required to do. For example, Kalamata does not allege that Slep-Tone ever obtained or misused a court order to force Kalamata to hire Slep-Tone-licensed karaoke operators. To the extent that Kalamata alleges that Slep-Tone instituted this action to harass Kalamata and pressure it to stop contracting with karaoke operators who are not licensed through Slep-Tone, the claim fails. The institution of a lawsuit with malicious intent or the purpose to harass, on its own, does not constitute abuse of process. *Commerce Bank, N.A. v. Plotkin*, 627 N.E.2d 746, 748 (Ill. App. Ct., 3rd Dist. 1994); *Baldwin Piano, Inc. v. Deutsche Wurlitzer GMBH*, No. 03 C 2105, 2003 WL 21801190 at, *4 (N.D. Ill. Aug. 4, 2003) ("If 'harassing' a defendant by requiring it to defend itself in a lawsuit was enough to constitute abuse of process, then the mere filing of a lawsuit with a 'bad' motive would be enough to state a claim, but it is clearly not."). Accordingly, Count VII is dismissed.

## IV. Conclusion

For the foregoing reasons, Slep-Tone's motion to dismiss, R. 13, is granted in part and denied it in part. The motion is denied as to Counts I, III, IV and V. The motion is granted as to Counts VI, VII, and VIII. The Court grants Kalamata leave to amend Counts VI, VII, and VIII subject to counsel's Rule 11 obligations within fourteen days of the date this order. If Kalamata does not amend Counts VI, VII and VIII within that time frame, the Court will dismiss those Counts with prejudice.

ENTERED:

*Thomas M. Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: December 18, 2014